UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                  :
MARIE Y BARHOUMA,                                 :
                                                  :
                    Plaintiff,                    :        CASE NO. 1:14-CV-02214
                                                  :
            v.                                    :
                                                  :        OPINION & ORDER
ATHENIAN ASSISTED LIVING, LTD.,                   :
Et AL,                                            :        [Resolving Docs 16, 18]
                                                  :
                    Defendants.                   :
                                                  :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Defendants Athenian Assisted Living Ltd, et al ("Defendants") fired Plaintiff Marie Y.

Barhouma ("Plaintiff") on December 17, 2013 .  In this case, Plaintiff argues that Defendants fired

her in retaliation for Plaintiff Barhouma making sexual harassment claims. Plaintiff now brings sex-

discrimination, retaliation, assault and battery, wrongful termination, intentional infliction of

emotional distress, and negligent hiring and retention claims against Defendants.

        Defendants move for summary judgment.[1] Plaintiff has filed a cross-motion for partial

summary judgment.[2] For the following reasons, the Court **DENIES** Plaintiff's motion for summary

judgment and **GRANTS IN PART** Defendants' motion for summary judgment as to the quid pro

quo sex discrimination claim and the wrongful termination claim only.

---

[1] Doc. 16.
[2] Doc. 18.   The parties filed respective response and reply briefs. Docs. 22, 23, 24, 25.

Case No. 1:14-CV-2214
Gwin, J.

## I.

### *Factual Background*

Plaintiff Marie Y. Barhouma worked at Athenian Assisted Living, Ltd ("Athenian") from July 5, 2012 to December 17, 2013. Athenian operates as an assisted living facility. Athenian hired Plaintiff to serve as activities director.[3] The activities director's responsibilities included going to various events and businesses in order to attract new clients. The activities director also plans activities for Athenian residents.[4]

Edmund Gates both hired and fired Plaintiff. Gates is the administrator of Athenian, and oversees Athenian's business operation.[5] Administrator Gates' uncle, Ron Livingston, also works at Athenian. Ron Livingston is Maintenance Director at Athenian.[6] The alleged conduct of Ron Livingston toward Plaintiff is at the center of this matter.

Plaintiff states that three months after she started working at Athenian, Livingston began to make unwelcome sexual advances toward her.[7] Plaintiff states that these unwelcome advances occurred almost daily.[8] Plaintiff states that Livingston would kiss her on the cheek, hug her, and grab her from behind and kiss her on the neck.[9] According to Plaintiff, Livingston also rubbed himself against Plaintiff's body, put his hands under her shirt, and placed his hand under Plaintiff's panties.[10]

---

[3] Doc. 21-1 at 258.
[4] Doc. 21-1 at 280.
[5] Doc. 21-1 at 249.
[6] Doc. 16-3.
[7] Doc. 21-1 at 124, 266– 278.
[8] Doc 21-1 at 276.
[9] *Id.*
[10] Doc. 21-1 at 269, 276.

Case No. 1:14-CV-2214
Gwin, J.

Further, Livingston admits to calling Plaintiff on her cell phone.[11] On one occasion, he called Plaintiff at 9:12 pm from his cell phone.[12] Plaintiff states that Livingston told her he loved her during this evening phone conversation.[13]

Kristeen Osler, a nurse at Athenian, witnessed Livingston rubbing Plaintiff's shoulders on several occasions.[14] Osler once overheard Plaintiff tell Livingston, "you need to stop doing this."[15] Maria Vigilianco, who also worked at Athenian, also witnessed  Livingston make unwanted sexual advances toward Plaintiff.[16] Vigilanco testified that she once saw Livingston kiss Plaintiff on the mouth. Vigilanco recounts that Plaintiff looked "stunned."[17]

Plaintiff complained to Gates on four separate occasions about Livingston's conduct.[18] The Athenian employee handbook advises employees to "seek solutions to problems through informal discussions with supervisors."[19] The Athenian employee handbook then sets out procedures for an employee to make a formal complaint if the employee so chooses.[20]

Plaintiff alleges that Administrator Gates took no action in response to Plaintiff's complaints. Plaintiff stated in her deposition that the following exchange took place between herself and Gates:

Q.     Tell me exactly what you said.

A.     I told him [Gates] that Ron was making advances.  And the times I did

---

[11]/Doc. 23-5 at 30.
[12]/Doc. 21-1 at 133.
[13]/Doc. 21-1 at 367.
[14]/Doc. 23-4.
[15]/Id.
[16]/Doc. 23-3.
[17]/Id.
[18]/Doc. 21-1 at 206.
[19]/Doc. 21-3 at 33.
[20]/Id.

Case No. 1:14-CV-2214
Gwin, J.

> complain was when Ron touched me inappropriately, touched me under my blouse, grabbed me. That was one time. He [Gates] had told me he didn't have time for this shit, to deal with it myself. And he would tell me that Ron doesn't mean anything by it.[21]

Defendants Athenian says it fired Plaintiff Barhouma for problems with her work. Defendants state that on August 5, 2013, Plaintiff was not in the building when paged and that she had not punched out.[22] Gates states he documented this incident.[23] Defendants state Administrator Gates completed an incident report two months later against Plaintiff on October 3, 2013, alleging that Plaintiff falsified an attendance sheet.[24] With that attendance sheet, Plaintiff listed having carried out a patient exercise activity with nine patients.  Defendants say that Gates had passed the exercise location and no patients were participating in any exercise activity.[25]  Plaintiff denies the allegations and states that Gates never spoke to her about the activity.[26]  Plaintiff Barhouma says Gates fabricated the incident report in response to the litigation.[27]

Before Plaintiff complained about Livingston's alleged sexual harassment, Administrator Gates gave Plaintiff two positive performance reviews. On October 16, 2012, Gates wrote that Plaintiff was a "great asset" to the company.[28] On July 7, 2013, Gates wrote that Plaintiff was a "good asset to Athenian" in her performance review.[29]

As described, Defendants rely upon an occasion where Defendants say Plaintiff did not

---

[21]/Doc.  21-1 at 211– 212.

[22]/Doc. 16-2.

[23]/*Id.*

[24]/*Id.*

[25]/Doc.16-2.

[26]/Doc. 21-1 at 68.

[27]/ Doc. 21-1 at 72.

[28]/Doc. 16-5.

[29]/Doc. 18-1 at 167.

-4-

Case No. 1:14-CV-2214
Gwin, J.

respond to a page and rely upon an occasion when Plaintiff allegedly claimed to have conducted an exercise session that Plaintiff had not actually conducted.

Defendants also say a November 13, 2013, incident led to Plaintiff's firing. Defendants state that the facility cancelled its annual Thanksgiving party because Plaintiff failed to prepare for the party.[30] Plaintiff disputes this incident.[31]

Gates placed Plaintiff on a 90-day probationary period, allegedly in response to the problems with the Thanksgiving party.[32] Defendants state that Gates fired Plaintiff on December 17, 2013 because she failed to adequately plan a Christmas party.[33]

Plaintiff argues she was fired for reporting Livingston's behavior to Gates. In support of her allegation, Plaintiff testified to the following exchange between herself and Gates:

> Q. When Ed [Gates] called you into the office on December 17, do you remember that meeting?
> A. Yes
> Q. And he told you you were fired and turn in your keys.
> A. Right
> Q. What did he tell you?
> A. He told me he was tired of hearing the rumors about me and Ron around the building. His uncle, to be specific.[34]

Plaintiff attempted suicide on December 17, 2013. The parties contest the reasons behind the suicide attempt.

Defendants partially argue that many months after it fired Plaintiff Barhouma, it acquired information that would have eventually led it to fire Barhouma. Although acknowledging that it had

---

[30]/Doc. 16-2.
[31]/Doc. 21-1 at 65, 69.
[32]/Doc. 16-2.
[33]/*Id.*
[34]/Doc. 21-1 at 72-73.

-5-

Case No. 1:14-CV-2214
Gwin, J.

not known at the time it fired Plaintiff, Defendants also say that Plaintiff later admitted to illegal

narcotic pain medication use.[35] Plaintiff states that Defendants gave her a pre-employment drug test

and that she passed the drug test.[36]

Defendants state that on October 9, 2014, Plaintiff pleaded guilty to 11 counts of deception

to obtain a dangerous drug.[37] Plaintiff responds that her case was dismissed, and she was not

convicted of the offenses charged.[38]

*Procedural History*

Plaintiff brought eight claims against Defendants: (1) sex discrimination in violation of Ohio

Revised Code Section 4112.02; (2) sexual assault and battery against Defendant Livingston only;

(3) retaliation under Ohio Revised Code Section 4112; (4) wrongful termination; (5) intentional

infliction of emotional distress; (6) negligent hiring and retention; (7) sex discrimination in violation

of Title VII; and (8) retaliation in violation of Title VII.[39]

Defendants ask for summary judgment on all claims.[40] Plaintiff has separately moved for

partial summary judgment on the following claims: (1) federal and state sex discrimination; (2)

federal and state retaliation; (3) assault and battery; and (4) intentional infliction of emotional

distress.[41]

**II. Legal Standard**

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no

---

[35]/Doc. 16-1 at 2.
[36]/Doc. 25-4.
[37]/Doc. 21– 7.
[38]/Doc.25– 5.
[39]/Doc.1.
[40]/Doc.16.
[41]/Doc. 18.

Case No. 1:14-CV-2214
Gwin, J.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[42/]
The moving party must first demonstrate that there is an absence of a genuine dispute as to a material
fact entitling it to judgment.[43/]  Once the moving party has done so, the non-moving party must set
forth specific facts in the record—not its allegations or denials in pleadings—showing a triable
issue.[44/]  The existence of some doubt as to the material facts is insufficient to defeat a motion for
summary judgment.[45/]  But the Court views the facts and all reasonable inferences from those facts
in favor of the non-moving party.[46/]

As an initial matter, this Court discusses the issue of after-acquired evidence. Defendants
emphasize that they would not have hired Plaintiff had they known of her prescription drug use.
Defendants also state that had Plaintiff entered a guilty plea while she was still working at Athenian,
Defendants would have fired her.[47/]

The Supreme Court has addressed the issue of after-acquired evidence in the context of the
ADEA. The court considered the question of "whether an employee discharged in violation of the
[ADEA] is barred from all relief when, after her discharge, the employer discovers evidence of
wrongdoing that, in any event, would have led to the employee's termination on lawful and
legitimate grounds."[48/] The Court declined to adopt "an absolute rule barring any recovering of back-
pay." Further, the Court stated, "it would not accord with this scheme if after-acquired evidence of
wrongdoing that would have resulted in termination operates in every instance, to bar all relief for

[42/] _Killion v. KeHE Distribs., LLC_, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[43/] _See Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).
[44/] _See Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986).
[45/] _Id._ at 586.
[46/] _Killion_, 761 F.3d at 580. (internal citation omitted).
[47/] Doc. 16-2.
[48/] _McKennon v. Nashville Banner Publishing Co._, 513 U.S. 352 (1995).

-7-

Case No. 1:14-CV-2214
Gwin, J.

an earlier violation."[49]

The Sixth Circuit has applied this standard to a discrimination case brought under Title VII.[50] In *Serrano*, the Sixth Circuit wrote, "case law from this Circuit suggests that, if anything, after-the-fact evidence of dishonesty should be considered only in determining the amount of damages due to the individual and not in the initial liability stage."[51]

Thus, Defendants' reliance on after-acquired evidence will not prevent this Court from engaging in the summary judgment inquiry.

### III.

*A.  Sex Discrimination*

Plaintiff brings a sex discrimination claim under Ohio Revised Code Chapter 4112. Federal case law interpreting Title VII applies in determining whether employment practices are discriminatory under Ohio Rev. Code Chapter 4112.[52]  Thus, the Court analyzes Plaintiff's sex discrimination claims under both federal and state law together.

Defendants argue that they are entitled to summary judgment on Plaintiff's federal and state-law sex-discrimination claims.  Plaintiff also moves for summary judgment on these claims. Each claim is examined in turn below.

1. Hostile Work Environment

---

[49] *Id.*

[50] *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012).

[51] *Serrano v. Cintas Corp.*, 699 F.3d 884, 903 04 (6th Cir. 2012) citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 416 n.2 (6th Cir.2004) ("Thus, while this post hoc, additional ground for plaintiff's termination may be relevant to the calculation of any damages, it is irrelevant to the determination of whether defendant improperly terminated plaintiff under the ADA or the FMLA in the first instance."), *cert. denied,* 543 U.S. 1146 (2005); *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 718 n.3 (6th Cir.2003) ("Regardless, this misrepresentation clearly was not a factor in Honda's decision to  *904 separate Cavin because Honda was not aware of the misrepresentation at the time of Cavin's termination. We do recognize, however, that the misrepresentation may be relevant to the calculation of Cavin's damages.").

[52] *See Hollowell v. Soc'y Bank & Trust*, 605 N.E.2d 954, 958 (Ohio Ct. App.. 1992).

Case No. 1:14-CV-2214
Gwin, J.

To establish a hostile work environment claim, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwanted harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment unreasonably interfered with her work performance, creating a hostile work environment; and (5) the employer is liable.[53]

A hostile work environment claim can survive only where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[54]  The plaintiff must show both that a reasonable person would find the environment objectively hostile and that the plaintiff personally found the conduct severe or pervasive.[55]

Offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment."[56] Further, "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required."[57]  As to the final prong, "[a]n employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."[58]

Here, Plaintiff is a member of a protected class.

---

[53]/*See* Clay v. UPS, Inc., 501 F.3d 695, 706 (6th Cir. 2007).
[54]/Harris v. Forklift Sys. 510 U.S. 17, 21 (1993).
[55]/Williams v. Gen. Motors Corp., 187 F.3d 553, 566-68 (6th Cir. 1999).
[56]/Hafford v. Seidner, 183 F.3d 506, 512– 513 (6th Cir.1999).
[57]/Harris v. Forklift Sys. 510 U.S. 17, 21 (1993).
[58]/Hafford v. Seidner, 183 F.3d 506, 512– 13 (6th Cir.1999).

Case No. 1:14-CV-2214
Gwin, J.

Plaintiff testifies to unwanted harassment at the hands of Livingston..[59] Plaintiff alleges

the unwanted harassment was based on her status as a woman. Plaintiff testified that the

unwanted harassment occurred on a daily basis.[60] Plaintiff has offered the testimony of two

witnesses who corroborate instances of unwanted sexual harassment at the hands of Livingston.[62]

This Court believes that a reasonable jury could find the Plaintiff's environment at

Athenian objectively hostile. Plaintiff's testimony and other witnesses' testimony of the alleged

conduct support such a finding.  Further, Plaintiff's claim survives the final prong of the inquiry.

Plaintiff testifies that she reported the unwanted harassment to Facility Administrator Gates on

four separate occasions.[63]

Defendants contend that Livingston never made unwanted advances and that  Livingston

and Plaintiff enjoyed a mutual friendship.[64] This is an issue of fact for the jury to resolve.

Because a genuine issue of material fact exists as to the sexual harassment claims, the hostile

work environment claim survives summary judgment and will be presented to the jury.

2. Quid Pro Quo

To state a claim for quid pro quo sexual harassment, Plaintiff must show that: (1) she

was a member of a protected class; (2) she was subject to unwelcome sexual harassment in the

form of sexual advances or requests for sexual favors; (3) the harassment complained of was

based on sex; (4) her submission to the unwelcome advances was an express or implied condition

of receiving job benefits or that her refusal to submit to her supervisor's sexual demands resulted

---

[59]The more serious allegations are: "forcefully kissing Plaintiff on the lips"and  "placing the palm of his hand
under Plaintiff's blouse to touch Plaintiff's breasts and other body parts."Doc.1.

[60]Doc. 21-1 at 150.

[62]Doc. 23-3 and 23-4.

[63]Doc 21-1 at 206.

[64]Doc. 16-1 at 15.

-10-

Case No. 1:14-CV-2214
Gwin, J.

in a tangible job detriment; and (5) the existence of respondeat superior liability.[65]

Plaintiff fails to make a prima facie case of quid pro quo sexual harassment because she fails to show the fourth element.

Plaintiff admits in her deposition that Livingston had no supervisory control over her:

Q        In terms of your employment and everything related to your employment at Athenian, was Mr. Gates the sole person responsible for all supervisory aspects of your job?

A        Yes.

Q        To your knowledge did any other employee at Athenian have any supervisory authority over you other than Mr. Gates?
A.       No.[66]

Plaintiff did not believe Livingston had any express supervisory authority over her.

However, "a quid pro quo claim of harassment can rest on an alleged harasser's authority to influence an adverse employment decision, if that influence is so significant that the harasser may be deemed the de facto decision maker."[67] To prevail with this argument, Plaintiff must establish that Livingston had more than mere "influence" or "input" in the decision-making process.[68]

Livingston is Gates' uncle. Plaintiff alleges that Livingston suggested that he would talk to Gates in order to place Plaintiff on salary instead of hourly wage.[69] Plaintiff does not offer any evidence as to whether Livingston ever actually did speak to Gates. This Court finds that

---

[65] *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 185–86 (6th Cir.1992); *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1128 (N.D. Ohio 1998).

[66] Doc. 21-1 at 11.

[67] *Foster v. Ohio Bell Tel. Co.*, No. 92828, 2009 WL 4697733, at *4 (Ohio Ct. App. Dec. 10, 2009)

[68] *Id.*

[69] Doc. 21-1 at 270– 271.

Case No. 1:14-CV-2214
Gwin, J.

construing the evidence most strongly in Plaintiff's favor, Plaintiff is not able to establish that

Livingston had more than mere "influence" or "input" in the decision-making process.

Thus, Plaintiff's quid pro quo sex discrimination claim fails as a matter of law.

### B. Assault and Battery

Plaintiff brings claims for sexual assault and battery against Defendant Livingston only.[70]

Ohio Revised Code § 2305.111 gives a one-year statute of limitations for assault and battery

claims. Here, Defendants contend that Plaintiff is not able to give a specific date as to when the

alleged battery occurred.

However, Plaintiff testified that the sexual harassment took place on a daily basis.[71]

Further, Plaintiff testified that Livingston physically touched her around November or December

2013, which is within the statute of limitations time period.[72]

As such, a rational trier of fact could find that there were instances of assault and battery

within the statutory period.

Defendants also seem to argue that because the last statement Livingston made toward

Plaintiff was "I love you," Livingston could not have possibly assaulted Plaintiff in the same time

period. This argument is misguided and reveals Defendants' lack of understanding of the

dynamics that often undergird sexual harassment and sexual assault cases.

Plaintiff's assault and battery claim survives summary judgment.

### C. Retaliation

Ohio Revised Code § 4112.02(I) and Title VII prohibit retaliatory actions against

---

[70]/Doc. 1.
[71]/Doc. 21-1 at 150, 266-278.
[72]/Doc. 21-1 at 366-367.

Case No. 1:14-CV-2214
Gwin, J.

employees who oppose, report, or participate in investigations involving conduct that allegedly

violates Ohio Revised Code §4112.01(I) or Title VII.[73/]

The burden for establishing a retaliation claim under Ohio Revised Code § 4112 is

identical to the burden for establishing retaliation under the federal employment laws..[74/] To

establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in activity

protected by Title VII; (2) her activity was known to the defendant; (3) thereafter, Athenian took

an employment action adverse to Plaintiff; and (4) there was a causal connection between

Plaintiff's protected activity and the adverse employment action by Athenian.[75/]

Plaintiff's burden to establish a prima facie case of retaliation "is not onerous."[76/] Indeed,

it "is a burden easily met."[77/]

If Plaintiff successfully establishes a prima facie case, the burden of production shifts to

the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions.[78/] If the

defendant fails to satisfy this burden, the plaintiff prevails. If the defendant satisfies this burden,

then the presumption of intentional discrimination is negated.

Plaintiff must then show by a preponderance of the evidence that the defendant

intentionally discriminated against her. She may do this by showing that the "nondiscriminatory"

reason that Athenian offers is not credible, but is merely a pretext for intentional

---

[73/] *See* 42 U.S.C. § 2000e-3(a).

[74/]*See Bukta v. J.C. Penney Co., Inc.*, 359 f.supp.2d at 671, n.15 (citing *Moorer v. Copley Twp.*, 98 F.Supp.2d 838 (N.D.Ohio 2000) (in turn citing *Chandler v. Empire Chem., Inc.*, 650 N.E.2d 950 (Ohio App.9 dist. 1994).

[75/]*See McElroy v. Philips Med. Sys. N. Am., Inc.*, 127 F. App'x 161 (6th Cir. 2005).

[76/]*EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997) (quoting *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir.1984)).

[77/]*Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987).

[78/]*Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir.2000); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

-13-

Case No. 1:14-CV-2214
Gwin, J.

discrimination.[79]

Here, Plaintiff establishes a prima facie case of retaliation. Reporting Livingston's sexual harassment to Gates is a protected activity under Title VII. Athenian fired Plaintiff after she made the complaints. Courts have consistently held that the plaintiff need only show that the protected activity and the adverse action have some connection.

> Accordingly, at the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.[80]

Plaintiff testified that when Gates fired her, he told her he "was tired of hearing the rumors about me and Ron [Livingston] around the building."[81] This is sufficient to show a causal connection between the firing and the protected activity.

Since Plaintiff satisfies her burden of making a prima facie case of retaliation, the burden shifts to Defendants to offer a legitimate, non-discriminatory reason for Plaintiff's job termination. Here, Defendants respond that Athenian terminated Plaintiff because of her poor job performance. Defendants offer evidence of incident reports documenting issues with Plaintiff's performance from August 5, 2013, October 3, 2013, and November 13, 2013.[82]

For Plaintiff's retaliation claim to survive summary judgment, Plaintiff must present sufficient evidence to create a material issue of fact as to whether Athenian's explanation is a mere pretext for its actions. Plaintiff meets this burden.

Plaintiff makes the argument that Athenian's non-discriminatory poor performance

---

[79]/*Id.*

[80]/*EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997).

[81]/Doc. 21-1 at 72,73.

[82]/Doc. 21-5.

Case No. 1:14-CV-2214
Gwin, J.

justification is pretextual because Plaintiff received two positive performance reviews during her time at Athenian. On October 26, 2012, Gates wrote that Plaintiff was a "great asset" to the company.[83] On July 7, 2013, Gates again wrote that Plaintiff was "good asset to Athenian."[84]

Plaintiff further testifies that she never saw the incident reports against her. Plaintiff testifies that Gates fabricated the incident reports.[85] In support of this contention, Plaintiff testifies that Gates had instructed Plaintiff to falsify a record in the past.[86]

In light of this conflicting evidence, the Court holds that a material issue of fact exists as to Plaintiff's retaliation claim. The retaliation claim survives summary judgment and will be presented to the jury.

### D. Wrongful Termination

In order to bring a claim for wrongful termination, Plaintiff must show the existence and manifestation of a clear public policy, that her dismissal jeopardizes this public policy, that the public policy motivated the conduct related to her dismissal, and that her employer lacked a legitimate business justification to terminate her.[87]

In her complaint, Plaintiff does not articulate a clear public policy. It seems as though the public policy Plaintiff attempts to articulate is one against sexual assault and battery and retaliation for reporting sexual assault and battery.[88]

First, Plaintiff does not cite to any authority in supporting this public policy. She merely

---

[83]/Doc. 16-5.
[84]/Doc. 18-1 at 167.
[85]/Doc. 21-1 at 65– 68.
[86]/Doc. 21-1 at 255– 258.
[87]/*Collins v. Rizkana*, 652 N.E.2d 653, 657-58 (Ohio 1995).
[88]/Doc.1.

Case No. 1:14-CV-2214
Gwin, J.

states that sexual assault and battery is a criminal offense under Ohio Revised Code Section

2907.[89]

Further, it is well established that "if existing law already provides remedies to vindicate

the public policy at issue, a plaintiff may not maintain a common-law wrongful discharge

claim."[90]  Title VII and Chapter 4112 provide adequate remedies to protect the alleged public

policy against retaliation. Further, Ohio Revised Code Section 2907 provides remedies for sexual

assault and battery. "There is no need to recognize a common-law action for wrongful discharge

if there already exists a statutory remedy that adequately protects society's interest."[91]

Therefore, Plaintiff may not bring a public policy claim of wrongful termination based

on the policy against sex discrimination, retaliation, or sexual assault and battery.  Moreover,

claims of unfairness do not support a claim for wrongful termination in violation of public

policy.[92]

Accordingly, there is no genuine dispute as to a material fact, and Defendants are entitled

to judgment as a matter of law on Plaintiff's wrongful termination claim.

*E. Intentional Infliction of Emotional Distress*

Plaintiff also brings an Ohio state law claim against Defendants for intentional infliction

of emotional distress. To recover on an intentional infliction of emotional distress claim, Plaintiff

must prove four elements:

---

[89]/*Id*.

[90]/*Grair v. Ohio Bell Telephone Co.*, 2009 WL 2762359, at *2 (N.D. Ohio Aug. 28, 2009) (citing *Leninger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 42 (Ohio 2007)).

[91]/*Leininger v. Pioneer Natl. Latex*, 875 N.E.2d 36, 42 (Ohio 2007).

[92]/*See Plona v. United Parcel Serv., Inc.*, 558 F.3d 478, 482 (6th Cir. 2009) (applying Ohio law) ("Plona's 'pretext' argument can be more accurately described as pertaining to the *fairness* of his termination.  As an at-will employee, however, Plona was subject to termination for any legal reason, fair or unfair." (emphasis in original)).

Case No. 1:14-CV-2214
Gwin, J.

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."[93]

"When claiming an intentional infliction of mental distress, only that conduct which exceeds 'all possible bounds of decency' is actionable."[94] For the conduct to qualify as sufficiently extreme and outrageous, "'[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!' "[95]

The facts in this case could arouse this level of resentment in a rational trier of fact. Plaintiff has testified that the sexual harassment took place on a daily basis and that Livingston placed his hands under Plaintiff's shirt and panties.[96] Plaintiff has offered the testimony of two other witnesses who observed Livingston's harassing behavior.[97] Plaintiff told Gates about Livingston's conduct on four separate occasions. According to Plaintiff, Company Administrator Gates took no corrective action and told her to "deal with it."[98]

The day Gates fired Plaintiff, Plaintiff attempted to take her own life.[99] Defendants state

---

[93] *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio App. Ct. 1983) (quoting Restatement (Second) Torts § 46 cmts. d, j (1965)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995).

[94] *Davis v. Billow Co. Falls Chapel*, 610 N.E.2d 1024, 1026 (1991).

[95] *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 ( 1983) (quoting Restatement (Second) Torts § 46, cmt. d (1965)).

[96] Doc. 21-1 at 269.

[97] Docs.23-3 and 23-4.

[98] Doc.21-1 at 274.

[99] Doc.21-1 at 44.

-17-

Case No. 1:14-CV-2214
Gwin, J.

that Plaintiff's suicide attempt was not connected to the sexual harassment. Instead, Defendants point to Plaintiff's prior mental health history.[100] However, Plaintiff told the hospital that treated her that being fired from her job was one of the stressors behind her suicide attempt.[101]

Given that there is a genuine issue of material fact as to Livingston's conduct and the cause of Plaintiff's suicide attempt, the claim of intentional infliction of emotional distress should be presented to the fact finder. Because a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations,[102] the fact finder is better positioned to determine the cause of the suicide attempt. The intentional infliction of emotional distress claim survives summary judgment.

*F. Negligent Hiring and Retention*

The Ohio elements of a negligent hiring or retention claim are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries."[103]

Here, Plaintiff does not offer any facts to support a claim of negligent hiring. In fact, Plaintiff testified in her deposition that she is unaware of any facts to suggest that Athenian was negligent in hiring Livingston.[104]

However, Plaintiff does offer testimony to support a claim of negligent retention. Plaintiff

---

[100] Doc. 16-1.

[101] Doc.21-1 at 94.

[102] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994).

[103] *Bush v. American Honda Motor Co., Inc.*, 227 F.Supp.2d 780, 801 (S.D.Ohio 2002).

[104] Doc. 21-1 at 224.

Case No. 1:14-CV-2214
Gwin, J.

testifies that she reported Livingston's conduct to Gates on four separate occasions.[105] Plaintiff

contends that Gates took no corrective action after Plaintiff reported Livingston's conduct. Gates

testified that no one at Athenian, including Plaintiff, has ever complained to him about

Livingston's behavior.[106]

Because a court considering a motion for summary judgment may not weigh evidence or

make credibility determinations,[107] the fact finder is better positioned to determine whether Gates

had actual or constructive knowledge of Livingston's behavior. Thus, there exists a genuine issue

of material fact as to the elements of the negligent retention claim.  This claim survives summary

judgment.

**IV.**

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment

and **GRANTS IN PART** Defendants' motion for summary judgment as to the quid pro quo sex

discrimination claim and the wrongful termination claim only.

IT IS SO ORDERED.


Dated: September 15 2015.                           s/            *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE

---

[105]Doc.21-1 at 206.
[106]Doc 16-2.
[107]*Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994).